# UNITED STATES DISTRICT COURT
### for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>DR-100 Communication / GPS Module with SIM Card,<br>Seizure No. 2026250600069401-0004 | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.    26mj4468 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C., Sec. 952 and 969 | Importation of a Controlled Substance |
| 21 U.S.C., Sec. 963 | Conspiracy to Import |

The application is based on these facts:

See attached affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Madyson Grosset
_____
*Applicant's signature*

Madyson Grosset, HSI Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 07/31/2026 _____

_____
*Judge's signature*

City and state:   San Diego, California     Hon. Guillermo Cabrera, United States Magistrate Judge
_____
*Printed name and title*

<u>**AFFIDAVIT**</u>

I, Special Agent Madyson Grosset, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.    I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

DR-100 Communication / GPS Module with SIM Card

Seizure No. 2026250600069401-0004

("**Target Device**")

as further described in Attachment A, for subscriber information and global positioning system location data from January 18, 2026 [two weeks prior to the load vehicle's first crossing on February 1, 2026] to May 17, 2026 [the date of Defendant's arrest]. There is probable cause that these records and information constitute evidence of violations of federal criminal law, namely, importation of federally controlled substances and conspiracy to do the same, in violation of Title 21, United States Code, Sections 952, 960 and 963, as described in Attachment B. The requested warrant relates to the investigation and prosecution of Luis Angel RUIZ ("RUIZ") for importing approximately 13.68 kilograms (30.16 lbs.) of methamphetamine from Mexico into the United States. The **Target Device** is currently in the custody of Homeland Security Investigations and located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

2.    The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

**BACKGROUND**

3.    I have been employed as a Special Agent with Homeland Security Investigations (HSI) since August of 2025. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California.  I am a graduate of the Federal

Law Enforcement Training Center in Glynco, Georgia.

4.    During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.  Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5.    Based on my training, experience, debriefs with drug traffickers at multiple levels of drug trafficking organizations, and conversations with experienced investigators, I am aware that a common tactic utilized by drug traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the Otay Mesa and San Ysidro Ports of Entry. With respect to the importation of controlled substances in vehicles, I am aware that traffickers in Mexico frequently utilize multiple vehicles to transport controlled substances from their origination in Mexico to their final destination in the United States. Oftentimes traffickers transport the controlled substances to a location near the international border in Mexico and then transfer them into a vehicle for crossing into the United States. Once inside the United States these vehicles can sometimes stop just over the border to transfer the controlled substances to another vehicle, or they can drive further into the interior of the United States prior to unloading them. Drug traffickers will use the same vehicle and driver on multiple occasions if they are successful in crossing controlled substances on the first occasion.

6.    Based on my training and experience and discussion with other agents, I am aware that narcotics traffickers sometimes utilize GPS (Global Positioning Services) Tracking Devices to track the individual(s) responsible for bringing the concealed narcotics into the United States. For example, prior to the importation, narcotics traffickers may place a tracker in the drug-laden vehicle, and when the importation is underway, narcotics

traffickers may track the smuggler to remotely monitor the progress of the narcotics smuggling event. Such trackers also enable the drug trafficking organization to locate the smuggling vehicle once it has crossed into the United States and arrived at its final dropoff destination.

7.      Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that GPS Tracking Devices (including their SIM cards) receive microwave signals emitted by satellites in earth's orbit as part of the Global Navigation Satellite System network. The tracking device is able to determine its location based on the signals it receives from the Satellites. For tracking devices located in vehicles, I am aware that trackers are able to gather information about a vehicle's speed, location, idle time, and additional diagnostics. The tracker then transmits all the data back to the computer servers maintained by the company servicing the tracker. The tracking device location can be determined anywhere on earth and reflects its location utilizing latitude and longitude measurements. Depending upon the number of satellites that connect to the device and the design of a particular tracker, the location can be accurately determined within meters. The companies that provide GPS tracker services may maintain accounts for individuals utilizing the trackers. They maintain account information that can include the account holder's name, address, email, and phone numbers. The accounts can also maintain the location data for trackers during the tracker's period of activation. I am also aware that the customers using the devices are then able to access the location data utilizing applications on their computer, cellphone, or other mobile device. can and often do contain electronic evidence, including, for example, location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the SIM card(s). Searches of a tracking device, a tracker account and a tracker's SIM card associated with the importation of controlled substances may yield evidence:

a. tending to indicate patterns of drug importation from Mexico into the United States to include locations, dates, and times;

b. tending to identify the location of drug stash houses in both Mexico and the United States;

c. tending to identify the location where drugs are loaded into vehicles in Mexico as well as locations where the drugs are unloaded once the importation of drugs from Mexico into the United States is complete;

d. tending to identify the user of, or persons with control over or access to, the **Target Device** as well as the vehicle used for importation of controlled substances;

e. tending to identify the routes taken to successfully cross drugs and further transport them into the interior of the United States; and

f. tending to identify co-conspirators involved in the importation of controlled substances through subscriber information.

## FACTS SUPPORTING PROBABLE CAUSE

8. On May 17, 2026, at approximately 10:30 AM, RUIZ applied for entry into the United States from Mexico through the Otay Mesa, California Port of Entry as the driver, sole occupant, and registered owner of a 2023 Nissan Sentra (the "vehicle") bearing California license plates.

9. A Customs and Border Protection Officer ("CBPO") asked RUIZ whether he had anything to declare, to which he responded "chips." The CBPO inspected the trunk of the vehicle and observed a Target bag holding four bottles of transmission fluid. Shortly after, an Anti-Terrorism Contraband Enforcement Team ("A-TCET") officer removed the cap from one of the transmission fluid bottles and pierced the opening of the bottle with a screwdriver. When the A-TCET officer extracted the screwdriver, the substance on the screwdriver began to crystallize.

10. Further inspection of the vehicle resulted in the discovery of six total bottles, four transmission fluid bottles and two anti-freeze bottles, concealed in the trunk of the vehicle with an approximate weight of 13.68 kilograms (30.16 lbs.). A sample of the

substance contained within the bottles field tested positive for methamphetamine.

11. RUIZ was placed under arrest at approximately 11:41 AM.

12. During a post-*Miranda* interview, RUIZ denied knowledge of narcotics in the vehicle. RUIZ claimed that he was going to deposit cash at a bank in Chula Vista and then was going to drop off chips and soda at his mother's house in Inglewood, California.

13. RUIZ was arrested and later charged with a violation of Title 21, United States Code, Sections 952 and 960, importation of a controlled substance.

14. The **Target Device** (see images below) was found in the vehicle on July 20, 2026, during a vehicle viewing. The **Target Device** was found plugged into the electrical component of the vehicle underneath the dashboard area and was later seized. Once opened, the **Target Device** appeared to have a SIM card.

 

 

*Photo of the* **Target Device***. Exterior on top, interior and SIM card on bottom.*

15. Based upon my training and experience, consultation with other law enforcement officers who have analyzed GPS tracking devices, and all the facts and opinions set forth in this affidavit, I believe the **Target Device** contained a SIM card, or other memory card, that may contain subscribers' contact and billing information and detailed information concerning the subscriber's tracker location based on GPS tracking signals (such as latitude and longitude data) associated with the individual tracking device, as well as GPS locations and other digital information.

16. Considering the above facts and my training and experience, there is probable cause to believe that the **Target Device** contains information associated with the movement of the vehicle involved in the smuggling in both the United States and Mexico. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. It is unknown how long RUIZ was involved in importing controlled substances. Coordinators of drug importation events may use the same driver on multiple occasions, and they may have the driver travel back and forth across the border to develop a normal crossing pattern. Accordingly, I request permission to search the **Target Device** for data beginning on **January 18, 2026** [two weeks prior to the vehicle's first crossing on February 1, 2026] **to May 17, 2026** [the date of Defendant's arrest].

## METHODOLOGY

17. It is not possible to determine, merely by knowing the GPS device's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the devices. Many GPS tracking devices store information in volatile memory within the device or in memory cards inserted into the device. For that reason, the device may only be powered in a secure environment. Current technology provides some solutions for acquiring some of the data stored in some SIM Card models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have

potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18.    Following the issuance of this warrant, I or the forensics laboratory will subject the **Target Device** to analysis. All forensic analysis of the data contained within the telephones and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17.    Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

18.    Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

## CONCLUSION

19.    Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Device** will yield evidence of violations of Title 21, United States Code, Sections 952, 960, and 963. Accordingly, I request that the Court issue a warrant authorizing the search of the **Target Device**, as described in Attachment A, and the seizure of the items listed in Attachment B, using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

MADYSON L GROSSET    Digitally signed by MADYSON L GROSSET
Date: 2026.07.30 22:51:49 -07'00'
_____
Special Agent Madyson Grosset
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 31st day of July 2026.

Hon. Guillermo Cabrera
United States Magistrate Judge

## <u>ATTACHMENT A</u>

## PROPERTY TO BE SEARCHED

The following property is to be searched:

> DR-100 Communication / GPS Module with SIM Card,
> Seizure No. 2026250600069401-0004
>
> ("**Target Device**")







The **Target Device** is currently in the possession of Homeland Security Investigations, located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

## **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the GPS and SIM card described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the GPS or its SIM card for evidence described below.  The seizure and search of the GPS and SIM card shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the GPS and SIM card will be electronic records, and data such as location data, for the period of January 18, 2026, up to and including May 17, 2026:

> a.      tending to indicate efforts to import drugs from Mexico into the United States and/or the possession of drugs in the United States;

> b.      tending to identify travel to or presence at locations involved in the importation or possession of drugs from Mexico into the United States, such as stash houses, load houses, or delivery points; and/or

> c.      tending to identify the user of, or persons with control over or access to, the **Target Device**.

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.